MAURICE M. TUCKER and JUDITH S. TUCKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tucker v. Commissioner
Docket No. 8973-77.
United States Tax Court
T.C. Memo 1979-180; 1979 Tax Ct. Memo LEXIS 343; 38 T.C.M. (CCH) 754; T.C.M. (RIA) 79180; May 9, 1979, Filed *343 Held, Ps had income in 1974 in the amount determined by the Commissioner. Maurice M. Tucker, pro se. Mark D. Petersen, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency in the petitioners' Federal income tax of $81.00 for 1974. The Commissioner concedes that the petitioners are entitled to a credit against such tax of $20.00. The only issue for decision is whether one of the petitioners received income of $472.81 in 1974 from Red Ball Motor Freight, Inc. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Maurice M. Tu0cker and Judith S. Tucker, husband and wife, resided in Dallas, Tex., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1974 with the Internal Revenue Service Center, Austin, Tex. Mr. Tucker will sometimes be referred to as the petitioner. On December 31, 1973, the petitioner filled out an application for employment with Red Ball Motor 0freight, Inc. (Red Ball). In such application, he represented, inter alia, that he had been referred to *344 Red Ball by "Louis Clayton." In connection with his application, Mr. Tucker listed three former employers, and Red Ball sent a letter to one of them to verify information in his application. In addition, in 1974, Red Ball filled out an employee status form on Mr. Tucker in which Mr. Tucker was regarded as a new employee with a current job classification of "casual checker." Each of these documents had been signed by the petitioner. Sometime thereafter, Mr. Tucker was employed by Red Ball, though he does not recall when or for how long. According to Red Ball's payroll records, Mr. Tucker worked for it and was paid $472.81 in 1974 as follows: Hours Worked
Check No.
Date of Check
Gross Pay
Net Pay
5.99
68559
1/12/74
$ 37.80
$ 35.60
15.84
68560
1/12/74
99.95
89.85
5.06
68561
1/12/74
31.93
30.13
5.06 68761
2/3/74
31.93
30.13
27.43
68837
2/10/74
173.08
146.38
9.16
72138
2/17/74
57.80
54.40
6.00
85133
8/25/74
40.32
37.92
In the beginning of 1975, Red Ball filled out a Form W-2 with respect to the petitioner on which it represented the wages paid to the petitioner as $472.81. It was Red Ball's practice to send such forms *345 to its employees. Red Ball had no records on Mr. Tucker for any year other than 1974. On or about April 1, 1973, Lewis Clayton commenced working for Red Ball as a "lead dock foreman." In such capacity, he was in charge of loading trucks. Occasionally, he needed additional help to load a truck, and in such situations, he hired so-called "casual employees." A casual employee is a person who works for freight companies as needed on a part-time basis. Typically, casual employees were hired on a short-term basis and were paid separately for each job. It was not unusual for a casual employee to work for different companies during the same week or to work for the same company several times a week. In the middle of 1974, Mr. Clayton became "supervisor of city drivers" for Red Ball. In such capacity, he did not hire nor work with casual employees. Mr. Clayton recalled that the petitioner worked for him on the docks at Red Ball. During 1974, the petitioner held a full-time job with Transport Management Co. In addition, Mr. Tucker worked as a casual employee at Lee Way Motor Freight, Inc. Because Lee Way paid casual employees at the completion of a job, and because casual employees *346 frequently were hired more than once during a pay period, it was not unusual for a casual employee to receive several paychecks in the same pay period. In their Federal income tax return for 1974, the petitioners did not report any income from Red Ball. In his notice of deficiency, the Commissioner determined a deficiency of $81.00, and such deficiency was based on the petitioner's failure to report $472.81 of income from Red Ball. OPINION The only issue for decision is whether the petitioner received income of $472.81 from Red Ball in 1974. The Commissioner's determination that the petitioner received such income in 1974 is presumptively correct, and the petitioner bears the burden of proving the error in the Commissioner's determination. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). Based on this record, the petitioner has failed to carry such burden. The evidence presented by the Commissioner establishes that Mr. Tucker applied for employment with Red Ball in late 1973, and that shortly thereafter, he was hired by Red Ball as a casual employee. The payroll records of Red Ball establish when and how *347 much he was paid. In addition, the practice of paying casual employees on a per-job basis explains why Mr. Tucker had more than one paycheck in some pay periods. Finally, Mr. Clayton, the load dock foreman at Red Ball during 1974, testified that Mr. Tucker worked for him on the docks. The petitioner does not actually dispute most of the evidence presented by the Commissioner. In fact, he acknowledges that he worked for Red Ball; he only questions whether he worked for Red Ball during 1974. However, he could not recall exactly when he worked for Red Ball. Based on this evidence, we must conclude and hold that he had income of $472.81 from Red Ball in 1974. Decision will be entered for the respondent.